IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA JANGULA, and EUGENE
JANGULA,

        Plaintiffs,

vs.                                     No. CIV 97-1362 MV/DJS

LEAR-SIEGLER, INC.; JOHNSON
CONTROLS, INC.; RAYTHEON
ENGINEERS & CONSTRUCTORS;
DOW CHEMICAL COMPANY;
DOWELANCO L.L.C.; BAYER
CORPORATION d/b/a Mobay
Corporation; and JOHN DOES 1-5,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Lear Siegler Services, Inc.'s[1] Motion for Summary Judgment, filed September 9, 1998 **[Doc. 66]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**, as explained below.

## BACKGROUND

Plaintiffs Linda Jangula and Eugene Jangula bring this action against several Defendants seeking damages for personal injuries to Linda Jangula and loss of consortium for Eugene Jangula

---

[1] The parties agree that Lear Seigler Services Inc. is incorrectly named in the Complaint and Caption as Lear-Siegler Inc.

allegedly caused by Linda Jangula's exposure to pesticides. Plaintiffs' claims against Defendant Lear Siegler Services, Inc. ("Lear Siegler Services") assert negligence by medical personnel who treated Linda Jangula, personnel allegedly employed by a corporation partially owned by Lear Siegler Services. Defendant moves for summary judgment in its favor, asserting that Plaintiffs have named the wrong corporate entity.

For the purpose of resolving this Motion, the Court finds that the following are the undisputed facts[2]:

1. In July 1993, Eugene Jangula, a Lieutenant Colonel in the United States Army, and his wife Linda Jangula, relocated to Riyadh, Saudi Arabia, per orders of the U.S. Army.

2. From August 6, 1993, until they left Saudi Arabia in July 1994, Linda Jangula sought medical treatment at a medical facility serving U.S. Army personnel, complaining of repeated exposure to pesticides.

3. Pursuant to a contract with the U.S. Government, Lear Siegler Arabia, Ltd. ("Lear Siegler Arabia"), provided the medical personnel at the facility in Saudi Arabia.

4. Lear Siegler Arabia is a Saudi Arabian limited liability company formed by National Telecommunications Co. Ltd. ("NATEL"), a Saudi Arabian limited liability company, and Lear

---

[2]Defendant asks this Court to disregard the affidavit of Nuno P. C. Cardoso presented by Plaintiffs and the attached exhibits on the grounds that the affidavit is not based on personal knowledge and some of the exhibits are hearsay. The Court has not reviewed or considered the news articles attached to the affidavit as these documents are hearsay. *See* Fed.R.Civ.P. 56(e); *Jackson v. Griffith*, 480 F.2d 261, 268 (10th Cir.1973). However, the Court has considered the copies of official documents attached to the affidavit, in particular the business licenses and associated documents, and has considered the information contained in the affidavit which is supported by these documents. Further, the Court will consider the printouts of Defendant's own web page as these documents are properly authenticated and constitute admissions by a party.

Siegler Management Services Corporation ("Lear Siegler Management Services"), an American limited liability company.

5. At the time of formation of Lear Siegler Arabia, NATEL was the majority stock holder owning 51% of the stock. Lear Siegler Management Services owned 49% of the stock.

6. At the time of the formation of Lear Siegler Arabia, at least one individual was a member of the board of directors of both Lear Siegler Arabia and Lear Siegler Management Services.

7. Both parties have failed to present any evidence as to the current status of Lear Siegler Arabia. The Court is without information as to whether this corporate entity continues in existence and, if so, who the current stock holders and board members are.

8. Lear Siegler Management Services was acquired by a corporation identified in the exhibits only as "UNC" in September 1994. At that time, Lear Siegler Management Services changed its name to UNC Lear Siegler, Inc. and continued to do business in this form. Lear Siegler Management Services ceased to exist as a corporate entity.

9. In October of 1995, UNC Lear Siegler, Inc. changed its name to UNC/Lear Siegler, Inc. and continued to do business in this form.

10. In a "Corporate Trade Name Report" filed with the state of Oklahoma, UNC/Lear Siegler Inc. identifies its self as "[f]ormerly known as Lear Siegler Management Services."

11. Lear Siegler Services was incorporated in September 1997.

12. Neither party has presented competent evidence as to the current status of UNC/Lear Siegler Inc. or the relationship between this entity and Lear Siegler Services.

13. The current mailing address of Lear Siegler Services is the same as the mailing address and principal office listed for UNC/Lear Siegler Inc.

14. On its web site, as accessed and documented on August 24, 1998, Lear Siegler Services used the acronym and logo "LSI." The web site stated, "[a]ltogether, LSI has more than 37 years experience with an uninterrupted record of distinguished contract performance." Elsewhere, the web site stated "[f]or more than 37 years, LSI has amassed extensive experience . . . ." The web site further stated that, "[i]n September, 1997, LSI was acquired by The Carlyle Group, a Washington-based investment banking group." Elsewhere, the web site described John H. Moellering as having been the president of Lear Siegler Services since January 1990. The web site further identified another employee as having been with Lear Siegler Services since 1978, and described a growth in revenue for "LSI" from 1992 to 1998.

Based on the forgoing, Defendant argues that it cannot be held liable for the actions of Lear Siegler Arabia because the current corporate entity, Lear Siegler Services, is not a parent corporation to Lear Siegler Management Services. Plaintiffs respond that the current entity is the successor to Lear Siegler Management Services and therefore liable to the extent that that entity would have been for the conduct of Lear Siegler Arabia.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

4

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

Defendant Lear Siegler Services moves for summary judgment in its favor, asserting that Plaintiffs have sued the wrong corporate entity. All parties agree that Lear Siegler Arabia is the entity which provided the doctors who allegedly committed malpractice and all parties agree that Plaintiffs here seek to hold liable a different corporate entity, Lear Siegler Services. The question before the

5

Court is whether Plaintiffs have established a sufficient nexus between these two corporations to warrant such liability.

As a general rule, one corporation is not liable for the debts and actions of another corporation merely because the first corporation owns some or all of the stock of the second. *Cruttenden v. Mantura*, 97 N.M. 432, 434, 640 P.2d 932 (1982); *see also Allen v. Toshiba Corp.*, 599 F.Supp. 381, 390-91 (D.N.M. 1984). However, the parent corporation may be found liable for the actions of its subsidiary if the court concludes that the subsidiary is the "alter-ego" of the parent. *Cruttenden*, 97 N.M. at 434; *Allen*, 599 F.Supp. at 390-91. "To find that a subsidiary is the alter ego of the parent corporation, it must be established that the parent control is so complete as to render the subsidiary an instrumentality of the parent." *Cruttenden*, 97 N.M. at 434; *Allen*, 599 F.Supp. at 390. To determine whether a parent company exercises such complete control over the subsidiary, New Mexico courts consider whether:

(1) The parent corporation owns all or majority of the capital stock of the subsidiary.

(2) The parent and subsidiary corporations have common directors or officers.

(3) The parent corporation finances the subsidiary.

(4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(5) The subsidiary has grossly inadequate capital.

(6) The parent corporation pays the salaries or expenses or losses of the subsidiary.

(7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(8) In the papers of the parent corporation, and in the statements of its officers, 'the subsidiary' is referred to as such or as a department or division.

(9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation.

(10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Cruttenden*, 97 N.M. at 434-35; *Allen*, 599 F.Supp. at 391.

In the present case, Defendant fails to present any facts or argument regarding the relationship between Lear Siegler Services and Lear Siegler Arabia. Rather, Defendant argues that Lear Siegler Services is not liable here because it is not the alter-ego of Lear Siegler Management Services. This argument, however, is wholly irrelevant. Lear Siegler Services did not come into existence until three years after Lear Siegler Management Services ceased to exist. Thus, it is not even possible for Lear Siegler Services to be the parent corporation let alone alter-ego of Lear Siegler Management Services, an entity that ceased to exist three years prior to its formation.

As Plaintiffs assert, the relevant inquiry regarding the relationship between Lear Siegler Services and Lear Siegler Management Services is whether the latter is a successor corporation to the former. "Under the current New Mexico rule, a successor corporation that purchases the assets of another corporation is, with four exceptions, not responsible for its predecessor's debts and liabilities." *Garcia v. Coe Manufacturing*, 123 N.M. 34, 36, 933 P.2d 243, 245 (1997); *see also Golden State Bottling co., Inc. v. Nat'l Labor Relations Board*, 414 U.S. 168, 182 (1973) (discussing similar rule under federal law); *Patton v. TIC United Corp.*, 77 F.3d 1235, 1240 (10th Cir. 1996) (discussing similar rule in Kansas); *Sandlin v. Corp. Interiors Inc.*, 972 F.2d 1212, 1218 (10th cir. 1992) (discussing similar rule in Colorado); *Trujillo v. Longhorn Manufacturing Co., Inc.,* 694 F.2d 221, 224 (10th Cir. 1982) (discussing similar rule in federal law); *Russell V. Texas Consolidation Oils*,

120 F.Supp. 508 (D.N.M. 1954 (discussing New Mexico law). The four exceptions to the traditional rule precluding liability are:

> (1) where there is an agreement to assume those obligations; (2) where the transfer results in a consolidation or merger; (3) where there is a continuation of the transferor corporation; or (4) where the transfer is for the purpose of fraudulently avoiding liability.

*Coe Manufacturing*, 123 N.M. at 38 (quoting *Southwest Distributing Co. v. Olympia Brewing Co.*, 90 N.M. 502, 505, 565 P.2d 1019, 1022 (1977)); *see also Golden State*, 414 U.S. at 182. The New Mexico Supreme Court further explained what facts were necessary to demonstrate a "continuation" of the corporate entity:

> Generally, a continuation of the transferor corporation occurs where there is (1) a continuity of directors, officers, and shareholders; (2) continued existence of only one corporation after sale of the assets; and (3) inadequate consideration for the sale of the assets. The key element of a "continuation" is a common identity of officers, directors and stockholders in the selling and purchasing corporations. Thus, the mere continuation exception has no application without proof of continuity of management and ownership between the predecessor and successor corporations.

*Coe Manufacturing*, 123 N.M. at 38 (citations and quotation marks omitted).

Plaintiffs here assert that Lear Siegler Services is the successor corporation to Lear Siegler Management Services, via UNC/Lear Siegler Inc, and is therefore liable to the full extent that Lear Siegler Management Services would be for the conduct of Lear Siegler Arabia. Citing the Oklahoma business registration documents for the corporations, Plaintiffs have established that UNC/Lear Siegler Inc. is the successor corporation of Lear Siegler Management Services. The question which remains is whether Lear Siegler Services is the successor corporation of UNC/Lear Siegler Inc. In support of this contention, Plaintiffs cite Defendant's own web site which holds itself out as having been in business for 37 years. The web site identified several individuals, including the corporate

8

president, as having worked for Lear Siegler Services from long before 1997. Defendant thus holds itself out as a continuation of the same corporate entity as UNC/Lear Siegler Inc., and the "key element"-- a continuity of directors and officers-- has been established. Defendant presents no contrary evidence indicating a distinction between UNC/Lear Siegler Inc. and the present entity Lear Siegler Services.[3] Accordingly, Plaintiffs have produced sufficient evidence to refute Defendant's assertion that it cannot prove that Lear Siegler Services is the successor corporation to Lear Siegler Management Services.[4]

The question remains, however, whether Lear Siegler Services can be held liable for the actions of Lear Siegler Arabia. Neither party presents facts or argument on this point. Defendant merely asserts that Plaintiff cannot prove this without arguing any facts or law which demonstrate why not. Plaintiffs on the other hand argue that Defendant failed to produce in discovery the relevant documents needed to prove the nexus between Lear Siegler Services-Lear Siegler Management Services and Lear Siegler Arabia. Indeed, Plaintiffs argue rather forcefully that Defendant failed to answer interrogatories and document requests in good faith, calling for sanctions.

After a careful review of the interrogatories and answers, the Court concludes that Defendant appears to have answered the questions in a manner which is literally truthful. It does appear that

---

[3]John Moellering's affidavit states that "Lear Siegler Services, Inc., is not a successor corporation to Lear Siegler Management Services." This wholly conclusory and self-serving statement is insufficient to contradict Plaintiff's proffered evidence that Defendant holds it self out as the same corporate entity, with the same corporate officers, and therefore is a successor corporation under the law.

[4]The Court does not now hold that Lear Siegler Services is the successor corporation to Lear Siegler Management Services but merely that, given Defendant's failure to produce contrary evidence, Plaintiffs have produced sufficient evidence to demonstrate that they may be able to prove that fact at trial.

Defendant may have been able to take advantage of a failure of careful drafting to avoid producing the documents Plaintiffs need. In particular, Plaintiffs repeatedly used the wrong corporate name to refer to Defendant, allowing Defendant to answer that it did not have in its possession the documents Plaintiffs sought. Under these circumstances, the Court cannot sanction Defendant.

However, the Court concludes that the Plaintiffs should be given an opportunity to further develop an evidentiary record as to the relationship between Lear Siegler Arabia and Lear Siegler Services-Lear Siegler Management Services. Particularly in light of the fact that Defendant has failed to produce evidence demonstrating that there is an insufficient nexus between these corporate entities as a matter of law, the Court concludes that judgment in Defendant's favor on this issue would be premature at this time.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Lear Siegler Services, Inc.'s Motion for Summary Judgment **[Doc. 66]** is hereby **DENIED**.

MARTHA VÁZQUEZ
DISTRICT COURT JUDGE

Attorneys for Plaintiffs:
    Kathleen Carter
    Joanne Holland

Attorneys for Defendant:
    Andrew Detherage
    Douglas Baker
    James Moore
    Briggs Cheney